No. 31,980

CHARLES W. BRUCE et al., doing business as BRUCE MARBLE AND GRANITE WORKS, *Appellants*, v. KANSAS UTILITIES COMPANY, *Appellee*.

(42 P. 2d 598)

Opinion filed April 6, 1935.

*Thurman Hill,* of Wichita, and *Walter B. Patterson,* of Fort Scott, for the appellants.

*A. M. Keene,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by plaintiffs, as purchasers of electric current, against defendant, which supplied the current, for overcharges. After a trial the court found for defendant, and rendered judgment accordingly. Plaintiffs appeal.

Plaintiffs operated a marble and granite works in Fort Scott, and used electric current purchased from defendant. Defendant was a distributor of electric current throughout the territory in which Fort Scott is situated. Plaintiffs' works was equipped with three motors of thirty, twenty and five horsepower, respectively, making a connected load of fifty-five horsepower.

Defendant had two rate schedules on file with the corporation commission, one known as E-3, and the other as E-5. The E-3 schedule was primarily designed for motor installations of from one to five horsepower, but it was available to all consumers throughout the territory served by defendant. It fixed rates, and contained the following: "The minimum charge shall be $1 per month per connected horsepower."

The E-5 schedule was designed primarily for large consumers, but was available to all consumers throughout the territory using motor installation of more than five horsepower. The schedule fixed rates, and contained the following: "The minimum monthly charge is the number of contract H. P. times $1.50."

Between November, 1929, and March, 1932, plaintiffs were charged and paid for current according to the E-3 schedule. Claiming the E-5 schedule was the cheaper, plaintiffs sued for the difference between what they paid and what they should have paid, amounting to $1,013, and interest.

Plaintiffs point to the availability provision of schedule E-3 for small consumers, and of E-5 for large consumers, and say that because they had three motors, of thirty, twenty and five horsepower, respectively, they came within the E-5 schedule. The E-5 schedule was available to small consumers, the E-3 schedule was available to large consumers, and availability did not establish rate for any consumer.

Plaintiffs assert that E-3 is a connected horsepower schedule, while E-5 is a contract horsepower schedule, which is manifestly true. The action, however, is not predicated on any contract horsepower motor installation, which is an installation physically limited to a fixed number of horsepower. Charles W. Bruce, one of the plaintiffs, testified they were free to operate all their motors to capacity at any time, day or night, if they chose to do so, and their full load was fifty-five horsepower. Nels Anderson, chief engineer of the corporation commission, testified that under those circum-

stances the E-3 schedule was the proper schedule, and that without a fixed horsepower limitation, and with simply a motor installation of connected horsepower, there was no basis other than the fifty-five connected horsepower on which to figure. The chief engineer further testified that for the E-5 schedule to be available, there must be some definitely fixed 100 per cent of horsepower. Whatever the maximum, it may not be exceeded, and to prevent preference and discrimination, there must be an actual physical arrangement whereby the user is unable to connect up with the utility company's facilities more than the contract horsepower.

The district court adopted the engineer's interpretation of the schedules as applied to the motor installation in plaintiff's works, and found for defendant. This court is not authorized to make a contrary finding or to declare the district court's finding to be illegal.

Defendant undertook to make an arrangement with plaintiffs, whereby they could have the benefit of the E-5 schedule on the basis of an average twenty-horsepower load, which corresponded closely to what plaintiffs used. Defendant's testimony was the arrangement embraced a definite restriction to twenty horsepower. Plaintiffs deny there was any restriction to twenty horsepower, and contend such an arrangement would be absurd, because plaintiffs' works were not equipped so that the restriction could be observed. Incidentally, this demonstrates applicability of the connected horsepower schedule. Plaintiffs also contend the arrangement, if made as defendant asserted, was void, a matter with which we are not concerned.

Defendant's testimony was that the E-3 schedule was in fact cheaper for plaintiffs until consumption reached 3,500 horsepower per month, a quantity which plaintiffs used only occasionally. The fact is interesting, but not important.

The chief engineer for the corporation commission acts in the capacity of adviser to the commission in respect to electric-power rates. In giving his testimony, he sometimes spoke of the practice of the commission, and what the commission would and would not recognize or approve. What he was in fact doing was this: He was testifying as an expert with respect to correct rules and methods "of figuring all those electrical things in connection with rates and installed capacity, and so on."

The judgment of the district court is affirmed.